**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| PALASOTA CONTRACTING, LLC | § | CASE NO. 23-31447-H5-11 |
| DEBTOR | § | (Chapter 11) |

---

**FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF**
**PALASOTA CONTRACTING, LLC**

---

COMES NOW, Palasota Contracting, LLC ("Debtor" or "PC") and files this, its Fifth Amended Chapter 11 Plan of Reorganization to address Claims asserted against and Equity Interests in the Debtor.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY. ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

PC is a Texas limited liability company formed in 2016. Based in Bryan, Texas, the company operates in the construction sand and gravel industry. The Debtor employ approximately 25 employees and contractors. The company filed this Chapter 11 bankruptcy case seeking to reorganize its business. PC ultimately determined that the most prudent course of action to maximize distributions to Creditors in this case was to rebalance is secured obligations and fund the payments contemplated by the Plan from its net operating revenue. Confirmation of the Plan will enable PC to provide a greater dividend for Allowed General Unsecured Claims than under a Chapter 7 proceeding.

## ARTICLE 2
### DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction set forth herein.

2.1    <u>Administrative Claim</u>. Any cost or expense of administration of the Chapter 11 Case incurred on or before the Confirmation Date entitled to priority under § 507(a)(2) and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any

1

actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the Debtor's post-petition business operations, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under chapter 123, title 28, United States Code. With respect to Administrative Claims which are allowed pursuant to §§ 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtor only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

2.2     Administrative Claim Bar Date. The last day to file an application for allowance of an Administrative Claim (other than quarterly U.S. Trustee fees), which shall be 45 days after the Effective Date unless otherwise established by a Final Order.

2.3     Allowed Administrative Claim. An Administrative Claim to the extent it is or becomes an Allowed Claim.

2.4     Allowed Amount. The amount of an Allowed Claim.

2.5     Allowed Claim. Any Claim:

(1) that (a) has been scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and is not scheduled as disputed, contingent, or unliquidated, (b) as to which no Proof of Claim has been filed, and (c) to which the Debtor has not objected on or before the deadline for objecting to a Claim; or

(2) as to which a Proof of Claim has been filed as of the Bar Date and to which the Debtor has not objected on or before the deadline for objecting to a Claim; or (3) that has been allowed by a Final Order.

2.6     Allowed General Unsecured Claim. A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

2.7     Allowed Interest. Any Equity Interest on the Equity Interest Record Date that has not been disallowed pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court. Any Interest that is allowed solely for purposes of voting to accept or reject this Plan pursuant to an Order of the Bankruptcy Court shall not be deemed to be an Allowed Interest for purposes of Distributions under this Plan.

2.8     Allowed Priority Non-Tax Claim. A Priority Non-Tax Claim to the extent it is or becomes an Allowed Claim.

2.9     Allowed Priority Tax Claim. Any Claim, to the extent such Claim is an Allowed Claim and entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

2.10     <u>Allowed Secured Claim</u>. A Secured Claim of a creditor to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not become an Avoided Lien.

2.11     <u>Allowed Subordinated Claim</u>. A Subordinated Claim to the extent it is or becomes an Allowed Claim.

2.12     <u>Avoidance Action(s)</u>. Any and all rights, claims and causes of action arising under or in connection with Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code and applicable state law including but not limited to the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001, et seq.

2.13     <u>Avoided Lien</u>. A Lien to the extent it has been set aside, invalidated, or otherwise avoided pursuant to an Avoidance Action.

2.14     <u>Bankruptcy Code</u>. Title 11 of the United States Code, as in effect on the Confirmation Date.

2.15     <u>Bankruptcy Court</u>. The unit of the United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over this Chapter 11 Case, or in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and any appellate or other court that is competent to exercise jurisdiction over the confirmation of this Plan.

2.16     <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended, and the Bankruptcy Local Rules for the Southern District of Texas, as applicable to this Chapter 11 Case, each as in effect on the date of the event described herein.

2.17     <u>Bar Date</u>. August 24, 2023, was the last day for creditors other than Governmental Units to timely file a Proof of Claim.  All Governmental Units Proofs of Claim must be filed by October 30, 2023.

2.18     <u>Business Day</u>. Any day other than a Saturday, Sunday or any other day on which commercial banks in Houston, Texas, are required or authorized to close by law or executive order.

2.19     <u>Cash</u>. Legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

2.20     <u>Cause of Action</u>. Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

2.21     <u>Chapter 11 Case</u>. Case No. 23-31447, filed under Chapter 11 of the Bankruptcy Code by the Debtor on April 24, 2023.

2.22    Claim. Any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.23    Claimant. A person asserting a Claim against the Debtor, its property, or the Estate.

2.24    Collateral. Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

2.25    Confirmation Date. The date upon which the Bankruptcy Court enters the Confirmation Order.

2.26    Confirmation Hearing. The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

2.27    Confirmation Order. The Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.28    Creditor. Any person that holds a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including an Allowed Claim against the Debtor's Estate of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.29    Cure Costs. The amount necessary to cure all defaults under any executory contract or any unexpired lease to which the Debtor is a party and to compensate the non-debtor party for any actual pecuniary loss resulting from such defaults in order to assume and assign the executory contract or unexpired lease under Sections 365(a) and 365(f) of the Bankruptcy Code.

2.30    Debtor. Palasota Contracting, LLC.

2.31    Deficiency Claim. The amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with § 506(a) of the Bankruptcy Code. A Deficiency Claim is a General Unsecured Claim.

2.32    Disclosure Statement. The Disclosure Statement with respect to this Plan, including all exhibits and schedules thereto, filed by the Debtor and approved by the Court pursuant to § 1125 of the Bankruptcy Code, as may be amended or supplemented.

2.33    Disputed Claim. A Claim against the Debtor as to which either (i) an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled or otherwise resolved by Final Order (ii) or which is marked on the Debtor's Schedules as disputed, contingent, or unliquidated.

2.34    <u>Disputed Claims Reserve</u>. A reserve to be held in trust for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

2.35    <u>Distribution</u>. The Cash and other property required by the Plan to be distributed to the holders of Allowed Claims and Allowed Interests.

2.36    <u>Distribution Date</u>. The day which is later of (1) the Final Distribution or (2) the fourteenth day after all timely-filed objections to Claims are resolved by the entry of a Final Order.

2.37    <u>Effective Date</u>. The day on which the Confirmation Order has become a Final Order.

2.38    <u>Equity Interest or Interest</u>. Equity Interest or Interest shall have the meaning ascribed to "equity security" in § 101(16) of the Bankruptcy Code.

2.39    <u>Equity Interest Holder or Interest Holder</u>. Equity Interest Holder or Interest Holder shall have the meaning ascribed to "equity security holder" in § 101(17) of the Bankruptcy Code.

2.40    <u>Equity Interest Record Date</u>. The Petition Date shall serve as the record date for purposes of Distributions to Allowed Interests and Allowed Subordinated Interests under the Plan.

2.41    <u>Estate</u>. The estate created upon the filing by the Debtor of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

2.42    <u>Final Distribution</u>. The final Distribution from the Debtor made pursuant to the terms of the Plan.

2.43    <u>Final Order</u>. An order or judgment which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for new trial, re-argument or rehearing has expired and to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired.

2.44    <u>General Unsecured Claim</u>. A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

2.45    <u>Governmental Unit</u>. The term Governmental Unit shall have the meaning assigned in the Bankruptcy Code.

2.46    <u>Interest Holder</u>. Any holder or owner of an Equity Interest on the Equity Interest

Record Date.

2.47    Lien. A charge against or interest in property to secure payment of a debt or performance of an obligation of the Debtor which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

2.48    Person. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit (as that term is defined in the Bankruptcy Code) or any agency or subdivision thereof or any other entity.

2.49    Petition Date. April 24, 2023, the date on which the Debtor filed the voluntary chapter 11 bankruptcy petition commencing this Chapter 11 Case.

2.50    Plan. This Chapter 11 Plan of Reorganization, as it may be amended or modified from time to time.

2.51    Plan Manager. Ricky Palasota, Jr., or any successor Plan Manager.

2.52    Plan Ballot. The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

2.53    Plan Documents. Any and all documents contemplated to be executed in connection with this Plan.

2.54    Priority Claim. Any Claim to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

2.55    Priority Non-Tax Claim. Any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code including, but not limited to, (i) Claims of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred and eighty (180) days prior to the Petition Date (to the extent of $15,150.00 per employee) as set forth in § 507(a)(4) of the Bankruptcy Code; (ii) Claims for contribution to an employee benefit plan as set forth in § 507(a)(5) of the Bankruptcy Code; (iii) Claims for deposits of up to $2,850.00 placed by consumers with the Debtor as set forth in § 507(a)(7) of the Bankruptcy Code; (iv) Claims based upon any commitment by the Debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution as set forth in § 507(a)(9); and (v) Claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because of intoxication from using alcohol, a drug or another substance as set forth in § 507(a)(10).

2.56    Priority Tax Claim. Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. A Claim based upon an assessed ad valorem tax that is secured by a statutory lien on property that was administered during this Chapter 11 Case is a Secured Claim to the extent

of the value of the property administered. Otherwise, such Claim is a General Unsecured Claim.

2.57   Pro Rata. The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

2.58   Professional Fee Claims. Administrative Claims for Professional Fees from the Petition Date through the Confirmation Date.

2.59   Professional Fees. All fees, costs and expenses incurred in these Chapter 11 Cases by any professional person (within the meaning of §§ 327, 328 or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to §§ 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

2.60   Professionals. Any Court-approved professional Person, including lawyers, accountants, financial advisors, investment bankers and restructuring advisors, employed by the Debtor at any time after the Petition Date and before the Confirmation Date.

2.61   Protected Persons. Protected Persons shall have the meaning set forth in Article 10.2   -

2.62   Rights of Action. Includes (a) any avoidance, recovery, subordination or other action of the Debtor or the Estate, (b) any Cause of Action of the Debtor or the Estate, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.

2.63   Schedules. The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed by the Debtor with the Bankruptcy Court in accordance with § 521(a)(1) of the Bankruptcy Code.

2.64   Secured Claim. A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's Estate securing such Claim, or any Claim to the extent that it is subject to setoff under § 553 of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Claim.

2.65   Subordinated Claim. An Unsecured Claim that is either (1) subordinated pursuant to 11 U.S.C. § 510 or other applicable non-bankruptcy law pursuant to Final Order, or (2) voluntarily subordinated by the holder of such Unsecured Claim.

2.67 6   Unsecured Claim. A Claim not secured by a charge, mortgage or lien against or interest in property of the Estate, including but not limited to any Deficiency Claim and any claim for damages resulting from the rejection of an executory contract or unexpired lease.

**Article 3**
**RULES OF CONSTRUCTION**

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as same may be amended, waived, or modified from time to time. Except as otherwise expressly provided herein, a term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever the words "include," "includes," or "including" are used in this Plan, such words are deemed to be followed by the words "without limitation" whether or not they are in fact followed by such words or words of like import. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. The article headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**ARTICLE 4**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

The Claims against and Interests in the Debtor are classified as set forth in this Article.

**4.1 Class 1 – United States Trustee's Fees– Unimpaired**

Class 1 consists of the US Trustee Quarterly Fees. All fees incurred by PC pursuant to 28 U.S.C. § 1930(a)(6) prior to entry the Confirmation Order will be paid by PC in full in Cash within thirty (30) days of the Effective Date. After entry of the Confirmation Order, PC will file with the Bankruptcy Court and transmit to the U.S. Trustee a true and correct statement of all disbursements made by PC for each month or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee. PC will insure the timely payment of all post confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case.

**4.2      Class 2 – Administrative Claims – Unimpaired**

Class 2 Allowed Administrative Claims arising under 11 U.S.C. § 503(b) will be paid in Cash and in full by the Debtor on the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes an Allowed Claim; or (iii) such other date as the Debtor and the holder of the Allowed Administrative Claim shall agree. Allowed Administrative Claims that are not secured by a valid, perfected, post-petition Lien are not entitled to post-petition interest or legal fees and

expenses.  The Debtor estimates $70,000.00 in administrative claims.

### 4.1.1   Class 3 – Encore Bank, NA– Impaired

Class 3 consists of the secured claim of Encore Bank, N.A. for the pre-Petition loans extended to the Debtor. All loan documents attached to the ENCORE BANK Proof of Claim, including all loan documents executed in connection therewith, whether referenced in the ENCORE BANK Proof of Claim or not, including guarantees, are collectively referred to herein as the "ENCORE BANK Loan Documents." ENCORE BANK shall be fully secured on all collateral described in the ENCORE BANK Loan Documents ("ENCORE BANK Collateral") in the amount of $572,004.22, which includes ENCORE BANK's Proof of Claim plus all post-petition interest, fees, and reasonable and necessary legal fees/costs in connection therewith all of which shall be deemed allowed by confirmation order of this Plan without necessity of ENCORE BANK to obtain separate Court approval ("Allowed ENCORE BANK Secured Claim"), calculated as follows:

| | |
|---|---|
| **PRINCIPAL** *(this accounts for $110,000.00 in post-petition adequate protection payments)* | **$522,455.74** |
| **INTEREST** | **$60,221.17** |
| **LATE FEES** | **$3,000.00** |
| **LEGAL FEES/COSTS** | **$28,872.50** |
| **DEPOSIT ACCOUNT** *(held at Encore Bank and shall be applied upon Plan confirmation)* | **($43,652.98)** |
| **TOTAL ALLOWED ENCORE BANK SECURED CLAIM** | **$567,896.43** |

The Allowed ENCORE BANK Secured Claim shall bear interest at a rate of 10.5% per annum and shall be paid in 42 consecutive monthly payments of $16,216.14 until fully paid.

The Debtor intends to sell the following items of collateral in which ENCORE BANK currently holds a valid first lien perfected security interest and constitutes a portion of ENCORE BANK Collateral ("Equipment"):

| Equipment | Estimated Value |
|---|---|
| 772GP | $75,000.00 |
| John Deere Scraper | $50,000.00 |
| Yanmar 55 | $35,000.00 |
| Yanmar 35 | $25,000.00 |
| Yanmar 35 | $25,000.00 |
| 700K | $100,000.00 |
| Trail King Lowboy | $40,000.00 |
| John Deere 310 SL | $45,000.00 |
| Kawasaki Loader | $40,000.00 |
| | |

| Total | $435,000.00 |
|---|---|

The Debtor intends to sell the Equipment through Iron Planet Buy It Now or a similar auction house. All sales shall be completed, and ENCORE BANK shall receive the sale proceeds, on or before May 9, 2024.  In no event is ENCORE BANK obligated to agree to the sale of the Equipment or release its lien on the Equipment unless it receives at least 90% of the Estimated Value whether sold individually or in bulk (*ENCORE BANK's lien on all other ENCORE BANK Collateral shall remain*) All proceeds received from any sale of the Equipment shall be remitted directly to ENCORE BANK and applied to the Allowed ENCORE BANK Secured Claim. .  Upon finalization of the sale(s) of the Equipment and receipt of the proceeds by ENCORE BANK, and if Debtor is not otherwise in default under the Plan, the ENCORE BANK Secured Claim shall be re-amortized to pay the remaining balance over 48 consecutive months at 10.5% per annum.

Further, the Debtor, within 7 days of receipt of the account receivable from the City of Bryan ("City of Bryan AR"), shall pay ENCORE BANK $60,000.00 of the amount received on the City of Bryan AR which ENCORE BANK shall apply to the principal of the Allowed ENCORE BANK Secured Claim.

Notwithstanding anything in this Plan to the contrary, all rights and remedies of ENCORE BANK under the ENCORE BANK Loan Documents shall control in the event of a default by Debtor in connection with failure to make a payment to ENCORE BANK under this Plan or failure of Debtor to comply with any other provision of the ENCORE BANK Loan Documents, including, but not limited to, rights of acceleration (without notice to cure of any kind which has been waived), all rights of foreclosure of the ENCORE BANK Collateral, and all reasonable and necessary legal fees/costs incurred by ENCORE BANK in connection with enforcing its rights and remedies under this Plan and/or the ENCORE BANK Loan Documents.  Notwithstanding anything in this Plan to the contrary, nothing under this Plan shall release, modify, or otherwise affect the liability under the ENCORE BANK Loan Documents of any non-Debtor borrower/guarantor, including Ricky Joe Palasota, Jr.

Upon the execution of the Confirmation Order, ENCORE BANK shall have the immediate right to offset the Deposit Account in the amount of $43,652.98 and apply that amount to the amounts owed to ENCORE BANK consistent with the chart above.

**To the Extent a Holder of a Secured Claim is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim. A Holder of such claim must amend its proof of claim no later than sixty (60) days after the Effective Date. Failure to amend a Claim will result in disallowance of any deficiency claim.**

### 4.4   Class 4 – Commercial Credit Group, Inc. – Impaired

Class 4 consists of the secured claim of Commercial Credit Group, Inc. for the pre-Petition loans extended to the Debtor. Class 4 is impaired and shall be satisfied as follows:

**Approval of Existing Loan Documents.**  The Debtor executed the following promissory notes and security agreements (the "Notes") and related documents (collectively with the Notes, the "Loan Documents") in favor of Commercial Credit Group Inc. ("CCG"):

- Promissory Note and Security Agreement dated September 28, 2020, total amount of scheduled note payments, $236,952.00

- Promissory Note and Security Agreement dated September 28, 2020, total amount of scheduled note payments, $369,090.00

- Promissory Note and Security Agreement dated January 29, 2021, total amount of scheduled note payments, $201,984.00

- Promissory Note and Security Agreement dated October 7, 2021, total amount of scheduled note payments, $395,808.00

- Promissory Note and Security Agreement dated February 22, 2022, total amount of scheduled note payments, $167,226.00

- Promissory Note and Security Agreement dated April 21, 2022, total amount of scheduled note payments, $225,836.00

- Promissory Note and Security Agreement dated April 27, 2022, total amount of scheduled note payments, $78,872.00

- Promissory Note and Security Agreement dated June 10, 2022, total amount of scheduled note payments, $325,256.00

- Promissory Note and Security Agreement dated June 16, 2022, total amount of scheduled note payments, $234,976.00

- Promissory Note and Security Agreement dated October 17, 2022, total amount of scheduled note payments, $449,334.00

**Affirmation of Loans and Security Interests.** CCG duly perfected its first liens on the collateral pledged under the Loan Documents, comprised of all of the titled and untitled equipment listed in paragraph 26 of each of the Notes (collectively the "Equipment Collateral") and a blanket security interest in all accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, investment property, and all other property, of whatever nature and kind, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all attachments, accessories, substitutions, replacements, replacement parts, additions, software and software upgrades and all cash and non-cash proceeds of and to all of the foregoing subject only to the lien of Encore Bank in the debtor's accounts and to duly-perfected purchase money liens held by other creditors in specific equipment (collectively the "Blanket Collateral" and, collectively with the Equipment Collateral, the "Collateral").

**Effectiveness of Prior Court Orders**. On or about June 13, 2023, the Court entered that certain Amended Agreed Final Order Regarding Debtor's Use of Cash Collateral [Docket No. 65]. (the "Agreed Final Order"). This Order is affirmed and not overruled by the Plan.

**Post Effective Date Loans.** Except as specifically modified herein, repayment of the CCG Obligations is and shall continue under the Plan to be governed by the terms and conditions of the CCG Loan Documents, and other documents, instruments and agreements executed and delivered by Debtor (hereinafter collectively called the "CCG Contracts"), and the Plan's default and other terms shall not alter or amend the post Effective Date terms due from the Debtor on the CCG Obligations under the CCG Contracts.

The Debtor sold certain pieces of Equipment Collateral pre-petition and CCG has recovered certain other Equipment Collateral following entry of the Agreed Order. In addition to the Debtor's payments set forth in this Plan on CCG's Allowed Secured Claim, in consideration of the Debtor's payment of $20,000.00 to be paid through three installments of $7,000.00 on or before January 15, 2024, $7,000.00 on or before February 15, 2024, and a final payment of $6,000.00 on or before March 15, 2024, the Debtor shall retain the following items of Equipment under the Plan (the "Retained Equipment"). The Retained Equipment shall remain subject to CCG's first-lien security interest:

| Description [1] | S/N or VIN |
|---|---|
| 2014 Mack GU813 Concrete Mixer truck w/ Mack MP7 6 cylinder diesel engine, Allison automatic transmission | 1M2AX13CXEM023566 |
| | |
| 2006 Vogele 2219W | 30660 |
| | |
| | |
| | |
| | |
| | |
| | |

To whatever extent the Debtor has any other equipment subject to CCG's liens and interests it shall immediately make that equipment available to CCG for repossession and consents to the sale thereof without further order of the Court, the stay having previously been modified in all respects. The Debtor affirms that it has no right under the Loan Documents to sell any item of Retained Equipment without CCG's prior written consent, and that CCG retains sole discretion whether or not to provide such consent depending on the terms of any proposed sale.

**Payment of CCG's Superpriority Administrative Claim.** As a condition to the Effective Date, the CCG superpriority administrative claim due under prior orders of the Court shall be paid in full. The amount currently outstanding is $45,000. All amounts owing through the Effective Date shall be paid as follows:

---

[1] All with attachments as may be more fully described in the applicable Negotiable Promissory Note and Security Agreement.

    i.      $15,000 shall be paid on or before September 27, 2023 and

    ii.     All further amounts shall be paid in equal monthly installments from and after the Effective Date as provided in the treatment of CCG's Allowed Secured Claim.

**CCG's Allowed Secured Claim**. CCG shall have an Allowed Secured Claim in the amount of $1,154,000.00 as of the projected Effective Date of October 27, 2023 (the "CCG Allowed Secured Claim Amount"). The Debtor has surrendered the remaining equipment financed by CCG.  Following the sale of the collateral, all funds received from any sale shall be remitted directly to CCG and the net amount after payment of any taxes, costs of sale, or other charges associated with the sale of the collateral, shall be applied to the claim balance. Upon finalization of the sale of the identified collateral and the application of the net proceeds thereof, the remaining claim balance owed shall bear interest at 6.0% per annum and be paid in monthly installments of $3,5000 until paid in full.

The Debtor has no claims against CCG.

CCG's transfer of two items of equipment as provided in Class 4's treatment shall be deemed purchased and acquired by the Debtor from CCG under a purchase money security interest, and shall comprise additional collateral securing CCG's Allowed Secured Claim.  At CCG's option, the Debtor will execute new loan documentation, substantially in the form of the existing Loan Documents but reflecting the payment terms of the Amended Plan.

**Events of Default.**  Upon the occurrence of any Event of Default under the Plan or any of CCG's Loan Documents, then CCG is permitted, upon transmission of a Notice of Default to Debtor and the failure by the Debtor to cure the default within 5 days, for CCG to demand collection and turnover of its Collateral, or to otherwise seek such other and further relief at law in any court of competent jurisdiction.

**Reservation of Rights**. Nothing in the Plan will affect CCG's rights against any loan guarantors or other third parties under the Loan Documents or other applicable law.

**4.5     Class 5 – Stellar Bank, N.A. f/k/a Allegiance Bank, N.A. – Impaired**

Class 5 consists of the secured claim of Allegiance Bank, N.A. for the pre-Petition equipment loan extended to the Debtor.  As of the filing of the Plan, the debt owed to Allegiance Bank was $158,821.53.  The Class 5 claim shall bear interest at a rate of five percent (5.0%) and be paid in 60 consecutive monthly payments of $2,997.16 with all pre-Petition liens, claims, and encumbrances existing in favor of Allegiance Bank, N.A. continuing to attach the to the Debtor's assets pending payment in full of the outstanding obligation. **To the Extent a Holder of a Secured Claim is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim. A Holder of such claim must amend its proof of claim no later than sixty (60) days after the Effective Date. Failure to amend a Claim will result in disallowance of any deficiency claim.**

### 4.6     Class 6 – Ally Bank, N.A. – Impaired

Class 6 consists of the secured claim of Ally Bank, N.A. for the pre-Petition equipment loan extended to the Debtor.  As of the filing of the Plan, the debt owed to Ally Bank was $238,315.05. The Debtor intends to surrender all equipment serving as Ally Bank's collateral.  **To the Extent a Holder of a Secured Claim is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim. A Holder of such claim must amend its proof of claim no later than sixty (60) days after the Effective Date. Failure to amend a Claim will result in disallowance of any deficiency claim.**

### 4.7     AmeriCredit Financial Services, Inc. d/b/a GM Financial – Impaired

Class 7 consists of the secured claims of AmeriCredit Financial Services, Inc. dba GM Financial ("AmeriCredit") for the pre-Petition equipment loan extended to the Debtor.  As of the filing of the Plan, the debt owed to AmeriCredit was $177,275.56.  The Debtor shall surrender the Dodge Ram – VIN xxx2801, and shall cooperate with turning this vehicles over to AmeriCredit and AmeriCredit may exercise its state law foreclosure rights with regard to the vehicle.  The Debtor shall retain the following vehicles:2018 Chevrolet Silverado – VIN xxx1981, valued at $14,749.00; 2018 Chevrolet Silverado – VIN xxx2983, valued at $14,749; 2018 Chevrolet Silverado – VIN xx 2459, valued at $14,749.00; and the 2020 Cadillac Escalade – VIN xxx5918, valued at $35,581.00 (the "Retained Vehicles").  Debtor shall pay the allowed secured claim of $79,828.00 at five percent (5.0%) interest and shall be paid in 60 consecutive monthly installments of $1,506.45 with all pre-Petition liens, claims and encumbrances existing continuing to attach to the Debtor's assets pending payment in full of the outstanding obligation.  If Debtor defaults on payments under the Plan, AmeriCredit may exercise its state law rights with regard to the Retained Vehicles.  **To the extent AmeriCredit is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim.  AmeriCredit must amend its proof of claim as any of the above-listed vehicles no later than sixty (60) days after the Effective Date or the surrender of the vehicle, whichever is later.  Failure to amend the Claim will result in the disallowance of any deficiency claim.  Any excess proceeds from the sale of any of the above-referenced vehicles will be applied to the outstanding balance on the other surrendered vehicles and then to the claim with regard to the Retained Vehicles and AmeriCredit shall provide Debtor with an accounting as to the sale of the vehicles.**

### 4.8     Class 8 - Kubota – Impaired

Class 8 consists of the secured claim of Kubota.  As of the filing of the Plan, the debt owed to Kubota was $164,432.05.  The Class 8 claim shall bear interest at a rate of five percent (5.0%) and be paid in 60 consecutive monthly installments of $3,103.04 with all pre-Petition liens, claims, and encumbrances existing in favor of Kubota continuing to attach to the Debtor's assets pending payment in full of the outstanding obligation. **To the Extent a Holder of a Secured Claim is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim. A Holder of such claim must amend its proof of claim no later than sixty (60) days after the Effective Date. Failure to amend a Claim will result in disallowance of any deficiency claim.**

### 4.9     Class 9 – Toyota Motor Corporation - Impaired

Class 9 consists of the secured claim of Toyota Motor Corporation. As of the filing of the Plan, the debt owed to Toyota Motor was $66,817.44. The Debtor intends to surrender the 2022 Dodge Ram. **To the Extent a Holder of a Secured Claim is undersecured, any deficiency balance that is due and owing will be treated as a Class 12 Claim. A Holder of such claim must amend its**

proof of claim no later than sixty (60) days after the Effective Date. Failure to amend a Claim will result in disallowance of any deficiency claim.

### 4.10    Class 10 – Secured Tax Claims - Impaired

Class 10 consists of the Secured Ad valorem Tax Claim of Brazos County, Texas.  The Reorganized Debtor shall pay the 2022 tax year taxes, plus 1% per month interest from the Petition Date to the Effective Date and from the Effective Date through date of full payment, in equal monthly installments beginning the first month following the Effective Date.  Said equal monthly installments shall be completed within a maximum of 60 months from the Petition Date.  The Reorganized Debtor shall pay the 2023 and subsequent post-petition ad valorem tax year liabilities to Brazos County, Texas prior to the state law delinquency date, in the ordinary course of business, and applicable penalties and interest shall accrue thereon per the Texas Tax Code if the Reorganized Debtor fails to do so.

Notwithstanding anything in the Plan or this Confirmation Order to the contrary, all tax liens securing the pre-petition and post-petition ad valorem taxes of Brazos County, Texas are retained against all of the Debtor or Reorganized Debtor's business personal property until the applicable tax year taxes, including applicable interest and/or penalties, are fully paid.  Brazos County, Texas shall be permitted to amend its claim to reflect actual 2023 tax year assessments without prior authorization of the Court.

Should the Reorganized Debtor fail to make any ad valorem payments to Brazos County, Texas as required by the confirmed Plan, Brazos County, Texas shall provide written notice of that default by email to Reorganized Debtor's counsel at kbartley@ws-law.com advising of said default and providing the Reorganized Debtor with a period of twenty-one (21) days from the date the email is sent to cure the default(s).  If the Reorganized Debtor fails to cure the default(s) within said twenty-one (21) day period, Brazos County, Texas may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed on the defaulted account.  The Reorganized Debtor shall be entitled to two (2) Notices of Default collectively.  In the event of a third (3rd) default, Brazos County, Texas may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this Court or further notice to the Reorganized Debtor.

### 4.11    Class 11 – Priority Tax Claims – Unimpaired

Class 11 consists of the Claims of the Texas Comptroller and Texas Workforce Commission, and any other applicable taxing authorities. Allowed Priority Tax Claims that are secured claims shall be entitled to interest at the rate provided by applicable law.

Priority tax claims owed to the Texas Comptroller and Texas Workforce Commission ("TWC") shall be paid in full in equal monthly installments of principal and interest no later than sixty (60) months of the Debtor's bankruptcy petition date with no prepayment penalty.  The Comptroller's priority tax claims shall accrue interest at the statutory rate of interest pursuant to Texas Tax Code 111.060, currently 8.50% per annum, from the Plan's Effective Date until paid in full.

Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas

Comptroller of Public Accounts (the "Texas Comptroller") reserves the following rights: (1) any statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) any rights to pursue any non-debtor third parties for tax debts or claims; (3) the payment of interest on the Texas Comptroller's administrative expense tax claims, if any; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Comptroller, the statutory rate of interest pursuant to Texas Tax Code 111.060; and (5) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D) and such post-petition tax claim(s) may instead be paid as and when they arise in the ordinary course of the Debtor's or any successor in interest's business.

Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the TWC reserves the following rights: (1) any statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) any rights to pursue any non-debtor third parties for tax debts or claims; (3) the payment of interest on the TWC's administrative expense tax claims, if any; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the TWC, the statutory rate of interest pursuant to Texas Tax Code 111.060; and (5) the TWC is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D) and such post-petition tax claim(s) may instead be paid as and when they arise in the ordinary course of the Debtor's business.  Each agency shall retain any liens to which they are entitled under applicable state or federal law. The Comptroller and TWC reserve the right to object to the assumption of any such liabilities due and owing to the respective agency.

A failure by the Debtor or any successor in interest to make a plan payment to any State or Federal governmental agency, shall be an Event of Default. If the Debtor or any successor in interest fail to cure an Event of Default as to a State or Federal agency within five (5) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.  The Debtor may receive up to three (3) notices of default, however, the third default cannot be cured.

Notice of the default shall be served by first class mail at:  3407 Tabor Road, Bryan, Texas 77808, Attn:  Ricky Palasota, Jr., and upon Debtor's attorney at: Waldron & Schneider, PLLC, 15150 Middlebrook Drive, Houston, TX  77058, Attn:  Kimberly Bartley.

### 4.12    Class 12 – Unsecured Creditors – Impaired

Class 12 consists of the allowed general unsecured claims of the unsecured creditors in this Estate. The deadline for filing proofs of claim was August 24, 2023. The Debtor intends to meet its obligations through  24 monthly payments of $8,334.00 during the first and second years following the Effective Date; plus 12 monthly payments of $16,667.00 during the third year following the Effective Date; plus 24 monthly payments of $25,000.00 during the fourth and fifth years following the Effective Date. Each monthly payment shall be paid pro rata based on a Creditor's Allowed Claim balance and shall be paid on or before the last day of the month. Payments shall begin on the last day of the month following the Effective Date of the Plan. To the extent the Debtor's revenue provides sufficient net profits, the minimum payments in any given month may be supplemented by additional payments until all Allowed Claims are paid in full or the expiration of the 60th month.

**4.13    Class 13 – Equity – Impaired and Deemed to Reject**

Class 13 consists of the ownership interest in the Debtor and all unsecured claims held by Ricky Palasota, Jr., the sole Member of the Debtor. Ricky Palasota, Jr shall receive no payment under the Plan unless and until all other classes are paid in full, but shall retain his membership interest.

**4.14    Class 14 – Ash Grove Cement Company – Impaired**

Class 14 consists of the claim of Ash Grove Cement Company, Inc. ("Ash Grove") for services rendered to the Debtor under the account of BVS Construction Company, LLC, an entity owned by individuals related to Ricky Palasota, Jr. Ash Grove filed a secured claim in the Debtor's estate in the amount of $292,496.20 plus attorney's fees ("POC 9").  The Debtor disputes the validity of the security interest alleged as the documents on which Ash Grove asserts its security interest are not signed by the Debtor nor do they pledge assets of the Debtor as collateral. Ash Grove contends Debtor is in possession of certain assets covered in a security agreement and UCC-1 Financing Statements filed of record against a non-debtor third party. In this regard, the Debtor is currently party to litigation styled Ash Grove Cement Company v. BVS Construction, Inc., Ricky Palasota, Sr., Palasota Construction, Inc., and Ricky Palasota, Jr. ("Ash Grove Claim").

In full resolution of the Ash Grove Claim and POC 9, the Debtor proposes that POC 9 in the amount of $292,496.20 plus attorney's fees of $50,000.00 (the "Ash Grove Claim") shall be treated as an allowed unsecured claim in the Debtor's estate.  Ash Grove shall receive quarterly disbursements under the same terms and conditions as those in Class 12 so that the Ash Grove Claim shall be paid in full at the end of five (5) years.  To the extent either the Chapter 11 Estate of Elaine Palasota (Case No. 22-30195 pending in the Southern District of Texas) or the probate estate of Ricky Palasota, Sr. pending in the County Court of Madison County, under Cause No. P22301 makes any payment to Ash Grove under their respective proposed distributions, the third party payor shall be subrogated to Ash Grove's right to assert any claim against and receive payment from the Debtor.

## ARTICLE 5
## IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES

**5.1    Unimpaired Classes**. Holders of Claims that are in unimpaired Classes are deemed to have accepted the Plan and are not entitled to vote on this proposed Plan. Claims of members of Classes 1, 2, 10, and 11 are not impaired under this Plan.

**5.2    Impaired Classes**. Only holders of Claims that are in impaired Classes may vote on this proposed Plan. The Claims of members of Classes 3-9, and Class 12 are impaired under this Plan.

**5.3    Controversy Concerning Classification, Impairment or Voting Rights**. In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, prior to the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim, the fixing or liquidation of which,

as the case may be, would unduly delay the administration of the Chapter 11 Case. In addition, the Bankruptcy Court may in accordance with § 506(b) of the Bankruptcy Code conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

## ARTICLE 6
## MEANS OF IMPLEMENTATION

**6.1      Vesting of Estate Property in the Reorganized Debtor**. On the Effective Date, Ricky Palasota, Jr. will make a new value equity contribution of $50,000.00 to be used towards satisfaction of the Debtor's obligations, will make no equity distributions of cash to owners during the pendency of the Plan, and releases any claims for pre-Petition unpaid wages owed by the Debtor to insure payments are made to all classes of creditors. On the Effective Date, all property of the Debtor and of the Estate including all rights to object to Claims, all Avoidance Actions, Causes of Action, Rights of Action, claims and causes of action identified herein, the right to pursue such claims and all other remaining property of the Estate as defined in § 541 of the Bankruptcy Code, including all Cash held and/or controlled by the Debtor on the Effective Date, equipment and other tangible and intangible property, shall be fully retained and vest in the Reorganized Debtor, free and clear of all liens, claims and encumbrances, except as otherwise provided in the Plan.  Ricky Palasota, Jr shall be the sole Member and Manager of the Reorganized Debtor.

**6.2      Continuation of Operations**. From and after the Confirmation Date, the Reorganized Debtor is authorized to take any and all actions which the Plan Manager determines are necessary for continued operation of the Reorganized Debtor and implementation and performance of the Plan.  The Plan Manager is expressly authorized to do the following on behalf of the Reorganized Debtor: (1) file claim objections, (2) make Distributions, (3) prosecute Causes of Action owned by the Estate, including all claims and causes of action arising under the Bankruptcy Code, (4) file tax returns for the Reorganized Debtor, and (5) take such other action as provided for under or to implement the Plan.

**6.3      General Powers of Plan Manager**. The Plan Manager, on behalf of the Debtor, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable law. The Plan Manager is authorized to take all such actions as in his judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

6.4.1    Make all Distributions contemplated under the Plan;

6.4.2    Supervise and administer the resolution, settlement and payment of Claims and Interests and the distributions to the holders of Allowed Claims in accordance with this Plan;

6.4.3    Enter into any agreement required by or consistent with the Plan and perform all of the Debtor's obligations thereunder;

6.4.4    Abandon any of the assets of the Debtor if the Plan Manager concludes that such assets are of no benefit to the Creditors;

18

6.4.5    Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Case;

6.4.6    Act in the name of the Debtor in any action before the United States Bankruptcy Court or any other judicial or administrative body;

6.4.7    Select and employ such professionals, agents or employees as the Plan Manager deems necessary to assist in the administration of the affairs of the Debtor and compensate such persons;

6.4.8    Hold any unclaimed Distribution or payment to the holder of an Allowed Claim in accordance with this Plan;

6.4.9    Propose any amendment, modification or supplement to this Plan or the Debtor's corporate governance documents;

6.4.10  Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Debtor;

6.4.11  Pay all lawful expenses, debts, charges and liabilities of the Debtor;

6.4.12  Enforce all provisions of this Plan;

6.4.13  Carry insurance coverage, including insurance to protect the Plan Manager against claims brought against the Plan Manager acting within his capacities with the Reorganized Debtor, in such amounts as they deem advisable;

6.4.14  Exercise such other powers and duties as are necessary or appropriate in the Plan Manager's discretion to accomplish the purposes of this Plan.

**6.5**    **Plan Timeline**. Some important dates for the Plan will be as follows:

6.5.1    <u>Confirmation Date</u>. The Confirmation Date will be the date upon which the Bankruptcy Court enters the Confirmation Order.

6.5.2    <u>Bar Date</u>. The Bar Date for non-governmental claims is August 24, 2023. The Bar Date for governmental proofs of claim is October 30, 2023.  Any proof of claim filed by the holder of such Claim after the Bar Date is hereby disallowed without the need for an objection to the Claim and/or a Final Order disallowing the Claim.

6.5.3    <u>Effective Date</u>. The Effective Date will be the day on which the Confirmation Order becomes a Final Order.

6.5.4    <u>Deadline to Object to Claims</u>. The deadline for the Reorganized Debtor to object to Claims will be (i) 45 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

6.5.5   <u>Distribution Date</u>. The Distribution Date will be later of (1) the date the last payment due to unsecured creditors is paid, or (2) the fourteenth day after all timely-filed objections to Claims are resolved by the entry of a Final Order.

**6.6     Resignation/Removal of the Plan Manager**. The Plan Manager may resign at any time by filing a written notice of resignation with the Bankruptcy Court if occurring before the Plan is fully performed and the Distribution Date has occurred. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; or (ii) the appointment of a successor Plan Manager. The Plan Manager may also be removed by the Bankruptcy Court for cause.

**6.7     Appointment of Successor Plan Manager**. In the event of the death, resignation or removal of the Plan Manager if occurring before the Plan is fully performed and the Distribution Date has occurred, the Court, after notice and a hearing, shall appoint a successor Plan Manager. Any successor Plan Manager appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Plan Manager shall immediately become vested with all the rights, powers and duties of the Plan Manager.

**6.8     Compensation Procedures**. All professionals employed by the Plan Manager or the Debtor shall be entitled to payment of their fees and reimbursement of all reasonable expenses with Bankruptcy Court approval, pursuant to the terms of their respective employment.

## ARTICLE 7
## CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS

**7.1     Objection Process**. Without limiting the rights of any third party, the Plan Manager shall be the authorized representative of the Debtor to object to the allowance of any Claims or Interests provided for under the Plan on behalf of the Debtor. The Plan Manager shall have the right to object to any claim, regardless of whether such claim (1) arises from a timely-filed proof of claim, (2) is scheduled by the Debtor as a contingent, disputed, and/or unliquidated claim, or (3) is scheduled by the Debtor as a non-contingent, non-disputed, and liquidated claim. The Plan Manager shall have the ability to compromise, settle, or otherwise resolve all filed claim objections by filing a notice with the Bankruptcy Court of any proposed settlement or resolution of a filed claim objection. If no Creditor files an objection to the proposed settlement/resolution within fourteen days of the date of such notice, the proposed settlement/resolution shall be deemed approved and the Plan Manager may settle such Claim without the approval of any other person or entity. If a Creditor files an objection to any proposed settlement, the Plan Manager shall either (i) withdraw the settlement; or (ii) bring the matter before the Bankruptcy Court for final resolution after notice and hearing. Unless otherwise ordered by the Bankruptcy Court, the Plan Manager shall file and serve all objections to Claims and Equity Interests no later than (i) 30 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**7.2** **Filing of Claims and Causes of Action**. The Plan Manager shall have the exclusive right to file and prosecute any Claims and Causes of Action on behalf of the Debtor, including all Avoidance Actions and derivative Causes of Action. The Debtor specifically reserves the right to bring claims relatively to its equity ownership as it may determine in its sole discretion. The Plan Manager shall have the authority to compromise, settle or otherwise resolve all Claims and Causes of Action by filing a notice of any proposed settlement with the Bankruptcy Court. If no objection is served on the Plan Manager within fourteen days of the date of such notice, the proposed settlement shall be deemed approved and the Plan Manager may settle such Claim or Cause of Action without approval of any other person or entity. If a Creditor objects to any proposed settlement, the Plan Manager shall either (i) withdraw the settlement; or (ii) bring the matter before the Bankruptcy Court for final resolution after notice and hearing.

**7.3** **Disallowance of Late Filed Proofs of Claim**. Except as otherwise provided in the Plan, any proof of claim filed by the holder of such Claim after the Bar Date is hereby disallowed.

**7.4** **Provisions Governing Distributions**.

7.4.1   <u>Record Date for Claims and Equity Interests</u>. The record date for Distributions to Allowed Claims under this Plan shall be the date the Bankruptcy Court enters its order approving the Disclosure Statement. For purposes of Distributions to holders of Allowed Claims, the Plan Manager will rely on the amounts set forth in the Plan, the claims docket maintained by the Clerk for proofs of claim filed in the Chapter 11 Case, and the Debtor's bankruptcy Schedules, except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001.

7.4.2   <u>Delivery of Distributions to Holders of Allowed Claims</u>. Except as to payments made on Allowed Secured Claims which will be made in accordance with the underlying loan documents in Classes 3 through 9, and otherwise subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed, unless the holder of the Allowed Claim has otherwise notified the Plan Manager in writing of a change of address. If any holder's Distribution is returned as undeliverable, it will be treated in accordance with Article 8.4.4 herein.

7.4.3   <u>Delivery of Distributions to Holders of Allowed Equity Interests</u>. Under no circumstances will the Debtor make any distribution to a holder of an Allowed Equity Interest unless and until all other Allowed Claims have been paid in full.

7.4.4   <u>Unclaimed Distributions</u>. The Plan Manager shall file or, if the Case has been administratively closed, serve on the master service list a Notice of Distribution within 10 Business Days of the date on which Distributions are made under the Plan. All claims for undeliverable Distributions must be made no later than the 30th day following the date that the Notice of Distribution is filed/served. After such date, all unclaimed Distributions will revert to the Debtor, and the remaining Claim of any holder with respect to such Distribution will be discharged and forever barred.

7.4.5   <u>Uncashed Checks</u>. Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of

issuance thereof. Distributions with respect to such un-negotiated checks will revert to the Debtor, and the remaining Claim of any holder with respect to such Distribution will be discharged and forever barred.

## ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases that are not assumed under this Plan are rejected, unless otherwise dealt with by the Plan or the Confirmation Order, or any other Order of the Court entered prior to the Effective Date, or which are the subject of a motion to assume pending on the Effective Date. To the extent that any Executory Contracts and/or Unexpired Leases are assumed under this Plan, the Plan Manager shall designate such Executory Contracts and/or Unexpired Leases within 10 days of the Effective Date by filing a notice with the Bankruptcy Court setting forth the Executory Contracts and/or Unexpired Leases to be assumed and the proposed Cure Costs under such Executory Contracts and/or Unexpired Leases. Parties to Executory Contracts and/or Unexpired Leases designated to be assumed pursuant to this Article 9.1 shall have 21 days from the date such notice of assumption is filed to object to the assumption of their respective Executory Contract and/or Unexpired Lease and the proposed Cure Costs. Failure to object shall be deemed approval of the assumption and Cure Costs proposed by the Plan Manager. Any objection filed pursuant to this Article 9.1 shall be determined by the Bankruptcy Court after notice and a hearing.

**8.2    Assumed Executory Contracts and Unexpired Leases**. The Debtor intends to assume its contractual obligations with its customers and with its landlord, Jack Lemons, for its current business facility in Bryan, Texas.  Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject filed on or before the Confirmation Date. Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case shall void and without effect unless approved by the Bankruptcy Court. Amendments, modifications, supplements, and restatements approved by the Bankruptcy Court shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith. Any arrearage in the lease obligations will be paid in full on the later of the Effective Date or the date by which the Debtor and the lessor agree in writing.

**8.3    Claims Based on Rejection of Executory Contracts or Unexpired Leases**. Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim against the Debtor unless subordinated under applicable law. Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in

a proof of claim filed with the Bankruptcy Court on or before the Bar Date. Any Claims not filed on or before the Bar Date shall be forever barred from assertion against the Debtor or the Plan Manager.

**8.4    Reservation of Rights**. Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

## ARTICLE 9
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**9.1    Impaired Classes to Vote**. Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan. Impaired Interest Holders are deemed to have rejected the Plan, and therefore, they are not entitled to vote. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim or Equity Interest shown as fixed, liquidated and undisputed in the Debtor's Schedules and is not the subject of a subsequently filed objection as to such fixed, liquidated, undisputed amount.

**9.2    Acceptance by Class**. A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Equity Interests of such class that have voted to accept or reject the Plan.

**9.3    Reservation of Cramdown Rights**. In the event that any impaired class shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

## ARTICLE 10
## EFFECT OF CONFIRMATION

**10.1    Legally Binding Effect**. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, except as otherwise permitted under the Plan, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor, or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Effective Date,; and (ii) for any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability. Notwithstanding anything to the contrary set forth herein, neither the Disclosure Statement nor this Amended Plan of Reorganization shall be construed as discharging the Debtor with respect to the claims asserted by Lisa Gregory in Case No. 22-001693-CV-85, styled, Lisa Gregory v. Palasota Contracting, LLC et al, pending in the 85th Judicial District Court, Brazos County, Texas (the "Brazos County Lawsuit"). In addition, the Agreed Order (i) Modifying Automatic Stay Under Section 362 of the Bankruptcy Code for the Purposes of (A) Allowing For Prosecution of the Civil Lawsuit Now Pending in the District Court of Brazos County, Texas and

(B) Allowing Recovery and Collection Against Debtor's Applicable Insurance [Docket No 83] (the "Agreed Order") is fully incorporated into the Plan. Notwithstanding anything to the contrary set forth herein, or in the Debtor's Disclosure Statement, the Plan shall not affect, in any way,  the rights, remedies and recourses of Ms. Gregory to liquidate her claims against all Defendants, including the Debtor,  in the pending Brazos County Lawsuit to final judgment and to collect upon any applicable insurance of the Debtor or against any non-debtor party, their assets, or their applicable insurance.

**10.2    Limited Protection of Certain Parties in Interest** Except as to any acts of willful misconduct, gross negligence or fraud, the Debtor, the Plan Manager and attorneys, employed by the Debtor, collectively referred to as "Protected Persons"), shall  not have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection or related to the Debtor, the Chapter 11 Case, or the Estate, regarding (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan.  In any action, suit or proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or ultra vires activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

**10.3    Indemnification**. The Debtor shall indemnify the Plan Manager against any and all costs and expenses (including attorneys' fees) incurred by the Plan Manager in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities relating to the Debtor  or this Plan; provided, however, that the Plan Manager shall not be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that the Plan Manager was grossly negligent or acted fraudulently or with willful misconduct in performing the Plan Manager's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law, or ultra vires activity. The Plan Manager's indemnification under this section shall have a priority distribution right that is senior to the holders of Allowed General Unsecured Claims against the Debtor. The Plan Manager may use the Debtor's Assets (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this section.

**10.4    Continuation of Anti-Discrimination Provisions of Bankruptcy Code**. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor,  the Plan Manager or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit. Moreover, a Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any

requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor. All licenses, permits, charters, franchises, or other similar grants to the Debtor are hereby transferred and assigned on the Effective Date (which transfer and assignment is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) to the Debtor as applicable without the need for further application or approval by any Governmental Unit.

**10.5    Preservation and Retention of Claims and Rights**. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief. The Debtor and the Plan Manager reserve and retain any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief of any kind that the Debtor, the Estate, or the Plan Manager may have against (i) any insurer and/or insurance policies in which either the Debtor and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; (ii) any recipient of a transfer identified in the Debtor's statements of financial affairs, including any amendments thereto, filed in these Chapter 11 Case, as well as any other recipient of payments or property from the Debtor, or the Debtor's immediate or mediate transferee(s), from April 24, 2021, through the Petition Date; and (iii) any party owing the Debtor funds or in possession of assets of the bankruptcy estate with may be recovered under Chapter 5 of the Bankruptcy Code including, but not limited to claims against White Rock Excavation, Inc. for turnover of property of the Estate and payment of rental fees incurred during the pendency of this case, claims against J.C. Wall and BK Home Development, Inc. for services rendered in the Foxwood Crossing Subdivision, or claims against Darsh Enterprises, Inc., Clay Kolby, and Kolby Construction, LLC to foreclose on a valid Mechanic and Materialman's Lien Affidavit.

The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtor or the Plan Manager relating to any claims, Causes of Action or Rights of Action referred to in this Article 10.6, or otherwise. Except as specifically set forth herein, the Plan Manager shall constitute the representative of the Estate for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code.

## ARTICLE 11
## RETENTION OF JURISDICTION

**11.1    Exclusive Bankruptcy Court Jurisdiction**. The Court shall retain and have exclusive jurisdiction over these Chapter 11 Case to the maximum extent provided by law for the follow purposes following the Confirmation Date:

11.1.1    To determine any and all objections to the allowance and classification of Claims or Interests;

11.1.2    To determine the validity and priority of any Lien;

11.1.3    To determine the Allowed Amount of any Claim, whether secured or unsecured;

11.1.4    To allow any and all applications for allowances of compensation and reimbursement of expenses payable from the Estate;

11.1.5    To determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease.

11.1.6    To consider and approve any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order;

11.1.7    To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or related to any of the foregoing;

11.1.8    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor;

11.1.9    To issue orders in aid of execution and implementation of this Plan and the Confirmation Order, to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of this plan; and

11.1.10    To hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code

11.1.11    To hear and determine matters concerning potential violations of the automatic stay, regardless of whether such violation occurs before or after the Confirmation Date.

**11.2    Limitation on Jurisdiction.** In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

### ARTICLE 12
### CONDITIONS TO CONFIRMATION OF PLAN

**12.1    Conditions Precedent to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date:

12.1.1    The Confirmation Order, in a form and in substance reasonably satisfactory to the Plan Manager shall have been entered by the Bankruptcy Court;

12.1.2   The form of all documents necessary or appropriate to give effect to the transactions contemplated under the Plan have been approved and executed;

12.1.3   All required consents, approvals, and authorizations, if any, have been obtained;

12.1.4   There shall be no stay of the Confirmation Order in effect and the Confirmation Order shall have become a Final Order;

12.1.5   The Bar Date has passed; and

12.1.6   All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

**12.2     Annulment of Plan if Conditions Not Waived or Satisfied**. The Debtor reserves the right to waive any of the conditions precedent to the Effective Date. If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Plan Manager and all parties in interest will return to the status quo ante immediately before the entry of the Confirmation Order.

**ARTICLE 13**
**NOTICE PROVISIONS**

**13.1     Notices**. All notices, requests, elections or demands in connection with this Plan, including any change of address of any Creditor or Interest Holder for the purposes of receiving Distributions under this Plan, shall be in writing and shall be delivered personally, by facsimile, overnight courier or first class mail. Such notice shall be deemed to have been given when received or, if mailed by first class mail, 5 Business Days after the date of mailing, or if by overnight courier, the next Business Day following the date of mailing. Notices required to be sent to the following parties under this Plan shall be addressed to:

To the Plan Manager:
Ricky Palasota, Jr.
3407 Tabor Road
Bryan, Texas 77808
Ricky@pcontracting.net

Counsel for the Plan Manager:
Kimberly A. Bartley
Waldron & Schneider, LLP
15150 Middlebrook Drive
Houston, Texas 77058
kbartley@ws-law.com

**13.2     Limitation on Notice**. The Plan Manager shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of

such matters with no requirement for any additional or further notice:

13.2.1 <u>Notice of Entry of Confirmation Order</u>. Notice of the Effective Date shall be sufficient if mailed to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Such notice shall be mailed within 5 Business Days of the Effective Date.

13.2.2 <u>Post Confirmation Date Service</u>. From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities or Persons, except those Persons specified in Article 14.1 of this Plan, the Office of the U.S. Trustee and any Creditor or Interest Holder who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

13.2.3 <u>General Notice To Creditors</u>. All notices and requests to Creditors or Interest Holders of any Class shall be sent to them at the addresses set forth on the proofs of claim or, if no proof of claim was filed, to their last known address as reflected in the Debtor's records. Any Creditor or Interest Holder may designate in writing any other address for purposes of this Article, which designation shall be effective upon receipt by the Plan Manager.

## ARTICLE 14
## COMPROMISES AND SETTLEMENTS

**14.1   Effect of Confirmation Order**. Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan as against solely the Debtor and not any other Person, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

**15.1   Bar Date for Administrative Claims**. No Administrative Claim, other than Professional Fees, and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date. Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules. Any Administrative Claim, other than Professional Fees, and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtor and the Plan Manager shall have no liability for payment of any such Administrative Claim.

**15.2     Objections to Administrative Claims**. Objections to Applications for payment of Administrative Claims may be filed by any party in interest. In order to be considered, such objections must be filed on or before the 21st day following the date on which the application was filed. Any objections will be determined by the Bankruptcy Court.

**15.3     Payment of Professional Fees**. Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, applicable local rules, and the Fee Procedures Order. The failure to file an application by the foregoing deadline shall constitute a waiver of all such Professional Fee Claim.

**15.4     Payment of United States Trustee.**  Fees. Within thirty (30) days of the date that such payments are due, the Plan Manager shall pay all amounts owing to the United States Trustee as fees and costs imposed in connection with these Chapter 11 Cases.

**15.5     Employee Benefit Plans.** The Plan Manager, at his sole discretion, may elect to terminate or continue employee benefit plans. If the Plan Manager elects to terminate Employee Benefit Plans, (1) the Employee Benefit Plans shall be terminated in accordance with the applicable provisions of state and federal law, and (2) the Debtor shall have no liability for any obligations under any Employee Benefit Plan.

**15.6     Directive to State Agencies.** If the Debtor files Articles of Dissolution after the Distribution Date, all governmental agencies are directed to accept such articles and recognize the dissolution of the Debtor regardless of whether all Claims, including taxes have been paid in full. All creditors shall retain any rights or remedies available under Texas law against any assets of the Debtor in the event of such dissolution.

**15.7     Satisfaction of Liabilities**. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtor or the Estate, assets, properties, or interests in property.

**15.8     Warranty of Transfers from Reorganized Debtor**. All property, whether real or personal, to be transferred by the Plan Manager on behalf of the Debtor to any person or entity under this Plan, is transferred "as is, where is," with no representation or warranty of any kind except that all transfers shall be transferred free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5).

**15.9     Compliance with Tax Requirements**. In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Plan Manager shall file such information return with

the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Plan Manager within thirty (30) days from the date of such request, the Plan Manager may, at her option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**15.10   Amendment of the Plan**. This Plan may be amended or modified by the Debtor before, or by the Plan Manager after the Effective Date, as provided in § 1127 of the Bankruptcy Code.

**15.11   Timing of Distributions**. Unless otherwise specified herein, all payments and Distributions shall be made on a Payment Date determined by the Plan Manager. When a provision of this Plan requires that a payment shall be made on a certain date, such payment may be made (i) at any time prior to the date on which such payment is due; (ii) in more frequent intervals than set forth in such provision of the Plan; or (iii) not more than 14 days after the date any such payment is due. Notwithstanding the foregoing, no payment shall be considered late or otherwise result in a default unless the Plan Manager has failed to make the payment after the passage of 30 days following the receipt by the Plan Manager and by the Plan Manager's counsel of a written notice advising that a payment has not been received in accordance with the times set forth in this paragraph.

**15.12   Enforcement of Subordination Agreements/Settlement Agreements**. Any written (i) subordination agreement between holders of Allowed Claims; and (ii) settlements approved by the Bankruptcy Court during this Chapter 11 Case will be honored according to their terms for the purposes of distribution under this Plan.

**15.13   Filing of Documents in Public Records**. Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax. All state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**15.14   Right to Seek Further Orders**. The Plan Manager, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan.

**15.15   Regulatory Approvals**. As the Plan is not intended to modify or supplant any regulatory authority over the Debtor, all regulatory approvals required in connection with the Plan will be sought and obtained.

**15.16   Withdrawal of Plan**. The Debtor reserves the right to withdraw this Plan at any

time prior to the Confirmation Date. If the Debtor withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor, the Estate or any other person, or to prejudice in any manner the rights of the Debtor, the Estate or any person in any further proceedings involving the Debtor.

**15.17   Due Authorization by Creditors**. Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in this Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan; and (iii) indemnifies and holds harmless the Plan Manager, and their professionals and representatives with respect to such Distributions.

**15.18   Filing of Additional Documentation**. On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**15.19   Implementation**. The Plan Manager shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**15.20   Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**15.21   Further Effect of Confirmation**. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim or cause of action unless this Plan or the Confirmation Order specifically so provides. The non-disclosure or non-discussion of any particular Claim or cause of action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim or cause of action.

**15.22   Reservation of Claims**. The Debtor and the Plan Manager reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution Date, including, without limitation, any and all Claims and Causes of Action for relief that the Debtor  or the Plan Manager may have against any director, officer, any insurer under any insurance policy, or any other person or entity. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtor or the Plan Manager relating to any Claims or Causes of Action. The Plan Manager shall constitute the representative of the Debtor for purposes of asserting and/or enforcing Claims and Causes of Action under § 1123(b)(3)(B) of the Bankruptcy Code.

**15.23   Dates**. The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referenced in the Plan.

**15.24   Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable and except as otherwise provided under the applicable loan and collateral

documents with respect to any Allowed Secured Claim, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

**15.25   Conflict**. Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or this Plan are inconsistent with the Disclosure Statement, any other agreement entered into between the Plan Manager and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

Respectfully submitted,

**WALDRON & SCHNEIDER, PLLC**

/s/ *Kimberly A. Bartley*
Kimberly A. Bartley
SBN 24032114
15150 Middlebrook Drive
Houston, Texas 77058
Tel: 281-488-4438 / Fax: 281-488-4597
kbartley@ws-law.com
COUNSEL FOR THE DEBTOR

AGREED:

/s/ *Ricky Palasota, Jr. Manager*
**Palasota Contracting, LLC**